IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| HEDY DAVID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 21-cv-377 |
| | ) | |
| COMERICA BANK, | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, by and through her attorney, and avers against the Defendant the following:

## INTRODUCTION

1. This is a suit seeking damages, costs, and attorneys fees for Defendant's unlawful conversion of the Plaintiff's money and violations of the Electronic Fund Transfers Act (15 U.S.C. §1693 et seq.).

## PARTIES

2. Plaintiff is a resident citizen of Mobile, Alabama, and has been so for over two years.

3. Plaintiff is a "consumer" as defined by the Electronic Funds Transfers Act.

4. Defendant is a foreign corporation whose principal address is 1717 Main Street, Dallas, TX 75201.

5. Defendant is a "financial institution" as defined by Reg. E §1005.2(i), as it issues access devices to consumers like the Plaintiff for the purpose of providing electronic funds transfer services.

## JURISDICTION AND VENUE

6. 15 U.S.C. §1693m(g) provides this Court with subject matter jurisdiction over this case.

7. Venue is proper as substantially all of the events or omissions giving rise to the Plaintiff's claims occurred within this district.

## FACTUAL ALLEGATIONS

8. Defendant is the issuer of the "Go Program"[1] debit card, a card issued to recipients of benefit payments.

9. Defendant issued a Go Program debit card – an "access device" as defined by Regulation E – to the Plaintiff for the receipt of Plaintiff's child support payments.

10. The Plaintiff's benefits were deposited to her Go Program card account for some time without incident.

11. At some point in the spring of 2021, however, an unknown identity thief gained access to the Plaintiff's Go Program account.

12. On April 19, 2021, someone executed an "IVR Transfer"[2] of $2,999.00 out of the Plaintiff's Go Program account.

13. The Plaintiff did not authorize any such transfer.

14. The Plaintiff was not aware of any such transfer until after the money had been removed from her account.

15. In short, the missing $2,999 was a complete shock to the Plaintiff, who did not discover the fraudulent transaction until her debit card was declined when she attempted to use it at a local merchant.

16. The Defendant has never sent the Plaintiff monthly billing statements, as required by 15 U.S.C. §1693d(c).

17. The Plaintiff had not lost possession of her debit card, lent it to anyone else, or

---

[1] Variously referred to as a "Way-to-Go" debit card as well, the division of Comerica Bank that manages these cards refers to itself as "Go Program."
[2] Upon information and belief, the term "IVR" means "Interactive Voice Response," which is a telephonic system used by many financial institutions, including the Defendant, to transfer funds to and from consumer accounts. Because they are initiated over the telephone, IVR transfers are, by definition, "electronic fund transfers" pursuant to the EFTA and Regulation E. *See 12 CFR §1005.3(b)(1)(iv).*

authorized anyone else to use it.

18. When the Plaintiff discovered the fraudulent charges, she immediately took action to address the fraud.

19. On or about April 20, 2021, the Plaintiff telephoned the Defendant, explained to Defendant's agent that the $2,999 IVR transfer was fraudulent, and requested that her money be returned to her.

20. On or about April 20, 2021, the Defendant mailed the Plaintiff a "questionnaire of fraud," which arrived a few days later.  The Plaintiff filled it out and returned it to the Defendant, as requested.

21. In other words, she did exactly what the law required her to do.

22. Upon receipt of her dispute, the Defendant had a duty to conduct a bona fide investigation, and to refund the Plaintiff's money within 10 days.

23. Defendant did neither.

24. Instead, the Defendant mailed Mrs. David a letter on May 4, 2021 stating that they had "completed an investigation" and were refusing to refund her money.  A copy of this letter is attached as Exhibit A.

25. On June 2, 2021, the Plaintiff sent the Defendant another letter in which she reasserted her dispute of the $2,999 IVR transfer, again requested a refund, and included a copy of the police report she filed with the Mobile Police Department on May 11, 2021.  A copy of this letter and proof of mailing is attached as Exhibit B.

26. The Defendant received the letter on June 7, 2021.

27. The Defendant again refused to refund the Plaintiff's money.

28. The April 19, 2021 unauthorized IVR Transfer was an "error" within the meaning of 12 CFR §1005.11(a)(1)(i) and 15 U.S.C. §1693f(f).

29. The Plaintiff's April 20, 2021 and June 2, 2021 communications with the Defendant were "notices of error" as the term is defined by Reg. E. § 1005.11(b).

30. The Defendant's calculation of her account balance after the unauthorized transfer was incorrect, and was also an "error" within the meaning of 12 CFR §1005.11(a)(1)(i).

31. The fraud questionnaire that Plaintiff mailed to Defendant in early May of 2021 also

constituted a "notice of error" within the meaning of the Electronic Fund Transfers Act.

32. The Defendant did not provide the Plaintiff with any of the documents that it relied upon in making its determination.

33. The Defendant never told the Plaintiff where her $2,999 went, despite the fact that the law required the Defendant to provide her with periodic statements containing that information.[3]

34. Though there were numerous errors with respect to the Plaintiff's account, the Defendant failed to correct the errors within 10 days.

35. Defendant still has not corrected the errors.

36. Defendant failed to provisionally credit Plaintiff's account while it investigated her assertions of errors.

37. The Defendant did not conduct a *bona fide* investigation into the Plaintiff's claims.

38. Had the Defendant conducted an actual investigation into the Plaintiff's disputes, it would have concluded that the Plaintiff had not authorized an IVR Transfer of $2,999 to a mysterious account unknown and unrelated to the Plaintiff.

39. The truth is that the Defendant did not conduct an actual investigation into the Plaintiff's disputes.

40. The Defendant had no reasonable basis for concluding that the Plaintiff's account was not in error.

41. The Defendant knowingly and willfully concluded that no error had occurred, despite having ample evidence to show that at least one error had indeed occurred.

42. The Plaintiff lives on a limited income, and has no financial resources to fall back on without her child support payments.

43. As a result of the Defendant's conduct, the Plaintiff has suffered significant damages, including but not limited to:

    (a) The money that was taken and not returned;

---

3   Specifically, 15 U.S.C. §1693d(c) requires that for every month in which an electronic fund transfer moves money into or out of a consumer's account, a periodic statement must be sent to that consumer, and said statement must provide the details of every such electronic fund transfer, **including the identity of the recipient of any such funds**.  *12 CFR §1005.9(b)(1)(v)*.

(b) Consequential damages naturally flowing from the loss of $2,999, such as late fees, utility connection fees, finance charges, etc.;

(c) Emotional distress and mental anguish;

(d) Attorneys' fees.

## FIRST CLAIM FOR RELIEF: ELECTRONIC FUND TRANSFERS ACT

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43 above.

45. The Electronic Fund Transfers Act ("EFTA") governs debit card transactions such as the ones at issue in this case.

46. The EFTA prescribes a simple and consumer-friendly process for resolving disputes and errors made with respect to debit card accounts. *See 15 U.S.C. § 1693f(f):*

   (a) If the consumer discovers an error in his account, she may dispute the error within 60 days of first receiving documentation of the error; *15 U.S.C. § 1693f(a)*

   (b) the consumer's dispute need only identify the consumer's name and account number, indicate that the consumer believes an error to have occurred, and states the reason he believes an error occurred; *15 U.S.C. § 1693f(a)*

   (c) the dispute may be written or oral, but if the dispute is oral, the financial institution may require written confirmation of the dispute; *15 U.S.C. § 1693f(a)*

   (d) upon receipt of the consumer's dispute, the financial institution must "investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within 10 business days; *15 U.S.C. § 1693f(a)*

   (e) the financial institution determines that an error did occur, it must correct the error within one business day; *15 U.S.C. § 1693f(b)*

   (f) if the financial institution cannot complete its investigation within 10 business days, it may request an additional 35 days to complete its investigation; *15 U.S.C. § 1693f(c)*

   (g) however, if the financial institution requests more than 10 days to complete its investigation, it must "provisionally recredit the consumer's account for the

    amount alleged to be in error;" *15 U.S.C. § 1693f(c)*

    (h) if the financial institution determines that no error occurred, it must deliver the consumer and an explanation of such determination within three days; *15 U.S.C. § 1693f(d)*

47. If the financial institution fails to comply with any provision of the EFTA, it is liable to the consumer for his actual damages, statutory damages of up to $1000, plus court costs and reasonable attorneys fees. *15 U.S.C. § 1693m(a).*

48. Additionally, the financial institution is liable for treble damages if:

    (a) the court finds that the financial institution failed to provisionally recredit the consumer's account and either failed to make a good faith investigation or concludes no error occurred without having a reasonable basis for such conclusion; OR

    (b) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation. *15 U.S.C. § 1693f(e).*

49. In this case, the financial institution, Comerica Bank, wrongfully decided that no error had occurred, despite having access to more than enough evidence to realize that multiple errors had occurred.

50. It made this determination through a willful neglect of Mrs. David's repeated and consistent statements, her police report, and documentary evidence easily available to them at the time of their "investigation."

51. In other words, Comerica Bank not only failed to conduct a bona fide investigation, but also rejected Mrs. David's disputes despite having no reasonable basis for doing so.

52. Plaintiff notified the Defendant of the errors on multiple occasions by telephone and in writing.

53. Each of these communications was a "notice of error" within the meaning of 12 CFR §1005.11(b).

54. Defendant failed to correct the errors within 10 days of being notified of the errors.

55. Defendant still has not corrected the errors.

56. Defendant failed to provisionally credit Plaintiff's account while it investigated his assertions of errors.

57. Defendant still has not provisionally recredited the Plaintiff's account.

58. The Plaintiff is still without $2,999 that the Defendant wrongfully withheld from her.

59. Furthermore, "violations of [15 U.S.C. §1693f] (unlike violations of §1693h) can lead to statutory damages even in the absence of injury." Gale v. Hyde Park Bank, 384 F.3d 451 (7th Cir. 2004).

60. "In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of – (1) $50..." *15 U.S.C. §1693g(a).*[4]

61. Otherwise, "a consumer incurs no liability from an unauthorized electronic fund transfer." *15 U.S.C. §1693g(e).*

62. The Defendant has wrongfully held the Plaintiff liable for $2,999 of unauthorized electronic fund transfers – far more than the $50 limit of 15 U.S.C. §1693g(a).

63. "In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized..." *15 U.S.C. §1693g(b).*

64. As a result of the Defendant's own errors, its multiple failures to adequately investigate the Plaintiff's disputes, and its failure to follow the requirements of the EFTA, the Plaintiff has suffered damages, including but not limited to:

    (a) Loss of at least $2,999, which Defendant wrongfully deducted from Plaintiff's account;

    (b) Consequential damages naturally flowing from the Defendant's failure to provisionally re-credit Plaintiff's account, such as late fees, interest, penalties, and the costs of borrowing to make ends meet;

    (c) Consequential damages flowing from the Defendant's failure to correct the errors with respect to Plaintiff's account;

    (d) Embarrassment, stress, headache, anxiety, fear, and frustration;

---

4   Though the statute itself imposes no such time limit, Regulation E requires that, in order for the consumer's liability to be limited to $50, the consumer must notify the financial institution of the unauthorized transfer "within two business days after learning of the loss or theft of the access device." This case does not involve the loss of an access device, as it never left the Plaintiff's possession.

(e) Time spent attempting to correct Defendant's errors;

(f) Attorneys' fees.

65. Pursuant to 15 U.S.C. §1693m(a), the Defendant is liable to the Plaintiff for all actual damages suffered as a result of Defendant's violations of the EFTA, in addition to statutory damages of up to $1,000.

66. Because the Defendant's conduct was intentional and part of a persistent pattern of similar noncompliance with the law, the Court should award the Plaintiff the maximum statutory penalty of $1,000.

67. As the Defendant failed to provisionally credit Plaintiff's account and failed to undertake a good faith investigation into Plaintiff's disputes, the Defendant is liable to the Plaintiff for three times her actual damages.  *15 U.S.C. §1693f(e).*

68. As the Defendant knowingly and willingly concluded that the Plaintiff's account was not in error when such conclusion could not reasonably been drawn from the available evidence, the Defendant is liable to the Plaintiff for three times his actual damages.  *15 U.S.C. §1693f(e).*

69. The Defendant is also liable for the costs of this action, plus a reasonable attorneys' fee.  *15 U.S.C. §1693m(a)(3).*

## SECOND CLAIM FOR RELIEF: CONVERSION

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 43 above.

71. The Defendant had no right to take any of the money in Plaintiff's account.

72. Nonetheless, Defendant charged removed $2,999 from Plaintiff's account without justification in law or contract for doing so.

73. This also was a wrongful taking of the Plaintiff's property, in direct defiance of Plaintiff's sole and immediate right to possess such property.

74. These acts constituted conversion of the Plaintiff's funds.

75. Plaintiff has suffered significant damages as a direct result of such conversion.

76. The Plaintiff gave Defendant numerous opportunities to correct its errors and return Plaintiff's money, but Defendant persisted in its wrongful conduct knowingly.

77. Defendant's conversion of Plaintiff's money in the face of Plaintiff's numerous demands for its return, was committed with reckless disregard for the Plaintiff's rights.

78. For the conversion of Plaintiff's money, Defendant is liable for actual damages and punitive damages.

WHEREFORE, PREMISES CONSIDERED, Your Plaintiff respectfully prays this Court award her the following relief:

A) **A trial by a struck jury;**

B) An award of actual damages, statutory damages, costs, and attorneys' fees for Defendant's violations of the Electronic Funds Transfers Act;

C) An award of treble damages for Defendant's violations of 15 U.S.C. §1693f(e);

D) An award of actual damages and punitive damages for Defendant's conversion of the Plaintiff's property;

E) Such other relief as the Court may deem just and proper.

/s/ Judson E. Crump
Judson E. Crump
Lead Counsel for Plaintiff
250 Congress Street
Mobile, Alabama 36603
251.272.9148.
judson@judsonecrump.com

Exhibit A

Go Program
Fraud Services Department
PO Box 245998
San Antonio, TX 78224-5998

05/04/2021




>000542 7736636 0001 008235 10Z
HEDY DAVID
6719 BELWOOD DR W
SIDE B
THEODORE, AL 365820000



1-6053788888

Dear HEDY DAVID,

The Fraud Services Department has completed an investigation regarding your recent claim.

During our investigation we found a conflict in the information provided by you and the information resulting from our research. Based on this information, we cannot confirm that fraud occurred. You may request a copy of the documents in which we relied in making our determination.

If you wish to continue your pursuit of this claim we recommend that you report the incident to your local law enforcement agency or resolve by contacting the merchant directly.

You may check your balance online to verify information posted to your card by visiting https://www.goprogram.com or call us at 1-888-929-2460.

We appreciate your business and thank you for this opportunity to serve you.

Sincerely,

Fraud Services Department
Fraud Investigations Team
(855) 393-5178

FRD7-GO-v.01                                                    00542 7736636 000543 000543 0001/0001



Hedy R. David
6719 Belwood Drive West
Theodore, AL  36582

May 30, 2021

Comerica Bank/Go Program
1717 Main Street
Dallas, TX  75201

Re:  Claim #1-6053788888

Dear Sir/Madam,

On April 20, 2021, I opened a claim with you because funds were transferred out of my account without my permission or knowledge.  The theft occurred on April 19, 2021 and on May 5, 2021, I was informed that my claim was denied for unknown reasons. On May 11, 2021, a police report was filed with the Mobile Police Department.  Attached, you will find a copy of said report.

At this time, I am demanding that the money that was fraudulently transferred out of my account into another account be returned to me within 14 days of receipt of this letter.  The amount stolen was $2999.00.

Thank you in advance,


Hedy R. David

# MOBILE POLICE DEPARTMENT

## Offense / Incident Report

**GENERAL OFFENSE INFORMATION**  **Report Type:** Initial Report

| | | | | |
|---|---|---|---|---|
| Agency | MOBILE PD | | Location | 6719 BELWOOD DRIVE W APARTMENT B  MOBILE ALABAMA 36606 |
| Case # | M2210501410 | | | |
| File # | | | | |
| Description | 63  6719 BELWOOD DR W  AREA 19A | | | |
| Incident Status | PENDING | | From Date/Time | 05/11/2021 17:02 |
| | | | To Date/Time | |
| | | | Report Date | 05/11/2021 17:15 |
| Reporting Officer | DILLON, EMMANUEL | | Initial Rep. Date | 05/11/2021 17:15 |

### OFFENSE(S)

| | |
|---|---|
| Offense | SUSPICIOUS CIRCUMSTANCES |
| Statute | SUSPICIOUS |
| Attempt Status | COMPLETED |
| Offense Status | ACTIVE |
| Location | OTHER/UNK |
| Computer | N |
| Alcohol | N |
| Drug | N |
| Weapons | |
| Criminal Activity | |
| Bias Type | |
| Bias Motivation | |

### VICTIM(S)

| | |
|---|---|
| Name | DAVID, HEDY R |
| Address | 6719 B BELWOOD DRIVE W THEODORE, AL 36582 |
| Phone | 251-487-0373 |
| Race | U |
| Ethnic | |
| Sex | F |
| DOB | **/**/** (***) |
| Height | 5'02" |
| Weight | 145 |
| Hair | |
| Eyes | |
| S.S.N. | ___-__-____ |
| DL. & St. | ******** |
| JRN# | |
| Type of Victim | INDIVIDUAL |
| Victim Of | NONE |
| Injury Type | |
| Homicide/Assault Circumstance | |

### SUBJECT(S)

| | |
|---|---|
| Name | ., UNKNOWN |
| Address | 0000 UNKNOWN STREET  MOBILE, AL 36606 |
| Phone | ___-___-____ |
| Race | U |
| Ethnic | U |
| Sex | U |
| DOB | **/**/** (***) |
| Height | |
| Weight | |
| Hair | XXX |
| Eyes | XXX |
| S.S.N. | ___-__-____ |
| DL & St. | |
| JRN# | |
| Sub. Type | SUSPECT |
| Arrest ID | |
| Citation # | |
| Notes | |

Case No: M2210501410

## PROPERTY

| | | |
|---|---|---|
| Property Category | OTHER | Loss Type STOLEN |
| Description | MONEY FROM DEBIT CARD | |
| Notes | | |
| Make | Model | Style |
| Serial No / VIN | | Color |
| Vehicle Year | Plate No/ State/ Type | |
| Loss Date 4/18/2021 | Loss Quantity 1 | Loss Value $3,000.00 |
| Rec Date | Rec Quantity | Rec Value |
| Drug Type | Drug Quantity | Drug UOM |

Entered By   DILLON, EMMANUEL

Officer      DILLON, EMMANUEL

Supervisor   JAMES, MICHAEL

Case No: M2210501410

## Incident # M2210501410 (Synopsis)

Victim stated money was taken from her account.



Monday, May 24 2021        10:32        BETBEZE, DONNA                     Page 3 of 3

# U.S. Postal Service™
# CERTIFIED MAIL RECEIPT
## Domestic Mail Only

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

| | | |
|---|---|---|
| Certified Mail Fee | $3.60 | 0356 |
| $ | $0.00 | 06 |
| Extra Services & Fees *(check box, add fee as appropriate)* | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $0.55 | |
| $ | | 06/02/2021 |
| Total Postage and Fees | $4.15 | |
| $ | | |

Sent To _Conerve Bank_

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7017 1450 0001 5991 7638

# Certified Mail service provides the following benefits:

- A receipt (this portion of the Certified Mail label).
- A unique identifier for your mailpiece.
- Electronic verification of delivery or attempted delivery.
- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

## *Important Reminders:*

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
- Certified Mail service is *not* available for international mail.
- Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt;* attach PS Form 3811 to your mailpiece; for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.
  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).
- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form **3800**, April 2015 (Reverse) PSN 7530-02-000-9047



**UNITED STATES POSTAL SERVICE.**

```
             COTTAGE HILL
          705 OAK CIRCLE DR W
          MOBILE, AL 36609-9998
              (800)275-8777
06/02/2021                          04:15 PM
------------------------------------------
Product              Qty      Unit    Price
                              Price
------------------------------------------
First-Class Mail®     1                $0.55
 Letter
    Dallas, TX  75201
    Weight: 0 lb 0.80 oz
    Estimated Delivery Date
       Mon 06/07/2021
    Certified Mail®                    $3.60
       Tracking #:
          70171450000159917638
Total                                  $4.15

------------------------------------------
Grand Total:                           $4.15
------------------------------------------
Debit Card Remitted                    $4.15
    Card Name: MasterCard
    Account #: XXXXXXXXXXXX9672
    Approval #: 02624B
    Transaction #: 862
    Receipt #: 036605
    Debit Card Purchase: $4.15
    AID: A0000000042203          Chip
    AL: DEBIT
    PIN: Verified
------------------------------------------

**********************************************
USPS is experiencing unprecedented volume
    increases and limited employee
    availability due to the impacts of
 COVID-19. We appreciate your patience.
**********************************************

    In a hurry? Self-service kiosks offer
    quick and easy check-out. Any Retail
         Associate can show you how.

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
 and Data rates may apply. You may also
 visit www.usps.com USPS Tracking or call
              1-800-222-1811.

           Preview your Mail
           Track your Packages
           Sign up for FREE @
       https://informeddelivery.usps.com

  All sales final on stamps and postage.
   Refunds for guaranteed services only.
          Thank you for your business.

       Tell us about your experience.
  Go to: https://postalexperience.com/Pos
  or scan this code with your mobile device,
```



or call 1-800-410-7420.

---

UFN: 015607-0356
Receipt #: 840-53500544-2-5048344-2
Clerk: 06